## CASES

520 U.S. 751 (1997)---------------------------------------- 5, 24
Booker v. United States, 543 U.S. 220 (2005)---------- 12, 22, 23
Gall v. United States, 128 S. Ct. 588, 591 (2007)---------- 6, 19
Kimbrough v. United States, 128 S. Ct. 558, 563 (2007)-- 5, 8, 9,
    12, 21, 22
Marbury v. Madison, 5 U.S. 137 (1803)------------------------ 24
Quesada Mosquera v. United States, 243 F.3d 685, 686 (2d Cir.
    2001)--------------------------------------------------- 27
Rita v. United States, 127 S. Ct. 2465, 2468 (2007)----------- 10
Stinson v. United States, 508 U.S. 36, 38 (1993)-------------- 24
United States v. Allison, 63 F.3d 350, 351 (5th Cir. 1995)---- 27
United States v. Byfield, 391 F.3d 277, 280-8----------------- 27
United States v. DeMott, ___ F.3d ___, 2008 WL 124188 (2d Cir.
    Jan. 15, 2008)------------------------------------------ 28
United States v. Forty Estremera, 498 F. Supp. 2d 468, 47 1-72
    (D.P.R. 2007)---------------------------------------- 21, 28
United States v. Hicks, 472 F.3d 1167, 1170 (9th Cir. 2007)--- 21
United States v. Jones, 2007 WL 2703122 (D. Kan. Sept. 17, 2007)
    ------------------------------------------------------- 21
United States v. LaBonte, 70 F3d 1396, 1412 (1st Cir. 1995) 5, 24

## STATUTES

18 USC § 3553(a)--------------------------- 4, 10, 12, 13, 17, 27
18 USC § 3582(c)(2)------------------------------------------ 10
21 USC § 846------------------------------------------------- 6
28 USC § 991------------------------------------------------ 3, 23
28 USC § 991(b)--------------------------------------------- 23
28 USC § 994------------------------------------------------ 3, 23
28 USC § 994(a)(2)------------------------------------------ 23

## SENTENCING GUIDELINES

USSG § 4B 1.1----------------------------------------- 17, 18
USSG § 5G1.3(b)---------------------------------------- 4, 19
USSG § 1B1.10(c)-------------------------------------- 18, 19
USSG § 4B1.1----------------------------- 3, 6, 7, 8, 17, 25, 26
USSG § 1B1.10----------- 2, 3, 4, 11, 18, 19, 20, 22, 23, 24, 27
USSG §  1B3------------------------------------------------- 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,              CR No.: 3:00-cr-263(JCH)

     Plaintiff,

V.

TERRENCE THOMPSON,

     Defendant.                        August 14, 2008


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR**
**REDUCTION OF SENTENCE PURSUANT TO 18 USC § 3582(c)**


**INTRODUCTION**

Defendant, TERRENCE THOMPSON, seeks a reduction in his federal sentence of imprisonment pursuant to 18 USC § 3582(c). He argues that the sentence imposed by this Court on August 23, 2002 should be reduced because he was sentenced under the Federal Sentencing Guideline's crack guideline (USSG 2D1.1) that has subsequently been lowered.

There are at least three reasons in support of this motion for Thompson's sentence reduction and his argument that the Guideline, USSG 1B1.10, should be treated as advisory, and it should not inhibit this Court from reducing Mr. Thompson's sentence pursuant to § 3582(c) despite his previous sentencing as a career offender. (A) The United States Sentencing Commission's (USSC) revised policy statement regarding the

Guideline, USSG 1B1.10 violates 3582(c)(2) by restricting the sentencing court's ability to consider 3553(a) factors in imposing a new sentence. (B) The USSC instructs this Court to treat USSG 1B1.10 and USSG 2D1.1 as mandatory in violation of the Booker and Kimbrough cases. (C) The USSC violates its own statutory obligations under its enabling statutes (28 USC 991 and 28 USC 994).

On August 1, 2002, Mr. Thompson was sentenced to a term of 172 months' imprisonment after pleading guilty to a substitute information charging him with conspiracy to possess with the intent to distribute 5 grams or more of cocaine base in violation of 21:846 and 21:841(a)(1),(b)(1)(B). For his offenses of conviction, Mr. Thompson's total offense level originally was calculated at 31 and his criminal history category was VI. The Court, however, sentenced Mr. Thompson as a career offender. That still made his total offense level 31. The Court then imposed a term of imprisonment of 172 months based on the then-mandatory drug offense level guideline of USSG § 2D1.1 and the career offender guideline of § 4B1.1.

As discussed below, based on the changes to USSG § 2D1.1, Mr. Thompson is entitled to a sentence reduction. When properly calculated pursuant to the new § 2D1.1, Mr. Thompson's base offense level is 32. Mr. Thompson pleaded guilty to conspiring to possess with the intent to distribute 5 grams or more of

cocaine base the equivalent of at least 150 grams but less than 500 grams of cocaine base when relevant conduct is factored in under USSG § 1B3. After application of a three-level decrease for acceptance of responsibility, his total offense level is 29. Assuming a Criminal History Category of VI, Mr. Thompson's sentence equates to a Guidelines range of 151-188 months' imprisonment. He has served at least 72 months through July 24, 2008 before factoring in good time credit or 16 months of pre-sentence credit pursuant to USSG 5G1.3 (b).

## STATEMENT OF THE CASE

On December 11, 2007, the United States Sentencing Commission voted to make retroactive its revisions to § 2D1.1 – specifically, its reduction of the offense levels for crack quantities – thereby reducing the sentencing range on which Mr. Thompson's original sentence was based. Section 3582(c), Title 18 of the United States Code therefore permits this Court to reduce Mr. Thompson's sentence to achieve the goals of sentencing articulated by Congress in 18 USC § 3553(a).

The Sentencing Commission has attempted to limit any benefit to Mr. Thompson and others for crack offenses under the career offender guidelines through revisions to § 1B1.10 that purport to render any such sentence reduction "unauthorized" under § 3582(c)(2). The Commission asserts that if the amendment

in question "does not have the effect of lowering the defendant's applicable guideline range," the defendant is not eligible for a reduction. This guideline, like all the others, *see* Kimbrough v. United States, 128 S. Ct. 558, 563 (2007), is advisory and does not inhibit the Court from granting the relief that Mr. Thompson seeks. Nothing in the language of § 3582(c) requires that the amendment must actually have the effect of lowering a defendant's guideline range before the sentencing court can revisit the sentence. The statute simply requires that the defendant's sentence have been "based on" a sentencing range that has subsequently been lowered. *See*, United States v. LaBonte, 70 F3d 1396, 1412 (1st Cir. 1995) (rejecting the government's argument that a 3583(c)(2) resentencing is inappropriate where the defendant's original sentence falls within the amended Guidelines range because "we cannot be confident that, faced with a different range of options, the district court's choice will remain the same"), *overruled on other grounds, 520 U.S. 751 (1997)*

As further discussed below, the Court here apparently considered the difference between Mr. Thompson's non-career offender Guideline range and his career offender Guideline range when imposing sentence on Mr. Thompson. Its ultimate sentence of Mr. Thompson, therefore, was "based on" his non-enhanced Guidelines range. Moreover, all sentences involving crack

offenses – including career offender sentences – were "based on" the crack guideline sentencing ranges because those ranges represented the starting point of the Guideline analysis, both pre- and post- <u>Booker</u>, even for defendants ultimately sentenced under § 4B1.1. As the Supreme Court acknowledged in <u>Gall v. United States</u>, 128 S. Ct. 588, 591 (2007), "the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant" to any ultimate sentencing decision. As a result, this Court must reconsider whether, in light of the retroactive crack amendment, it still considers an advisory career offender sentence "sufficient but not greater than necessary to satisfy the purposes of sentencing" in Mr. Thompson's case – particularly now that the difference between that sentencing range and the non-career offender Guidelines sentencing range for the same crime is even greater. Given the facts and arguments below, the Court should order Mr. Thompson's sentence reduction.

## FACTUAL BACKGROUND

### A.  Mr. Thompson's Conviction, Original Sentence, and Revised Sentence

On July 24, 2002, Mr. Thompson was sentenced after pleading guilty to a substitute information charging him with conspiracy to possess with intent to distribute 5 grams or more of cocaine base in violation of 21 USC § 846 and § 841(a)(1). Pursuant to

§§ 2D1.2(a)(1) and 3E1.1 of the then-mandatory 2001 Sentencing Guidelines, this Court determined that Mr. Thompson's total offense level was a 31 (base offense level 34, reduced three levels for his acceptance of responsibility). It further determined that his Criminal History Category was VI. Mr. Thompson did not dispute this initial calculation of his offense level and Criminal History Category. If he had been sentenced pursuant to this non-career offender offense level, Mr. Thompson's Guidelines range would have been 188 - 235 months.

Based on his prior convictions, however, Mr. Thompson was subject to the career offender guidelines of USSG § 4B1.1. The defense consequently argued that while Mr. Thompson could be treated as a career offender, the Court should negate the career offender enhancements by granting a downward departure because (1) Mr. Thompson had committed all of his career offender predicate offenses years earlier and (2) all of his qualifying offenses were low-level drug crimes, not the type of serious crimes at which the career offender guidelines were aimed. Counsel for Mr. Thompson further argued, the career offender guidelines overrepresented the seriousness of Mr. Thompson's offense and his criminal history. Finally, the defense argued that this Court should consider the difference between Mr. Thompson's non-enhanced sentence and his career offender-

enhanced sentence in deciding the appropriate Guidelines range for Mr. Thompson.

The Court decided, over these objections, that Mr. Thompson's sentence should be enhanced pursuant to the career offender guideline, § 4B1.1. Mr. Thompson's base offense level became 34. The Court reduced his total offense level by three, to 31, for his timely acceptance of responsibility. It then apparently considered any disparity between Mr. Thompson's un-enhanced sentence and his career offender sentence. The Court ultimately sentenced Mr. Thompson to 172 months' imprisonment; 5 years supervised release, and a $100 special assessment.

> **B.  The 2007 Amendments to the Sentencing Guidelines and their Partial Correction of the Crack/Powder Differential**

Effective November 1, 2007, the Sentencing Commission reduced the 100-to-1 crack to cocaine ratio because of its "consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere." *See,* USSG App. C amend. 706 at 229-230 (hereinafter "Amendment 706 Reasons"). Furthermore, the Commission said, "the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems." *Id.* at 230. As

with the career offender guidelines, discussed infra, the Commission identified as the source of the problems with the 100-to-1 ratio the creation of guideline ranges by reference only to the statutory minimum and maximum, rather than through empirical research:

> The Commission has concluded that the manner in which the Drug Quantity Table in § 2D1.1 was constructed to incorporate the statutory minimum penalties for crack cocaine offenses is an area in which the Federal sentencing guidelines contribute to the problems associated with the 100-to-1 drug quantity ratio.
>
> When Congress passed the 1986 Act, the Commission responded by generally incorporating the statutory mandatory minimum sentences into the guidelines and extrapolating upward and downward to set guideline sentences for all drug quantities.

Amendment 706 Reasons at 230. The Commission consequently revised § 2D1.1 as an interim – and partial – fix to these problems. It decreased by two levels the corresponding offense levels for each quantum of crack. *See*, USSG App. C amend. 706. Now, depending on the quantity of crack that the defendant is found guilty of possessing, the crack/powder differential ranges from 25:1 to 80:1. *See*, <u>Kimbrough, 128 S. Ct. at 573</u>.

By recalibrating the crack cocaine quantity thresholds in this manner, the Commission has created a system in which the ratio of crack to powder cocaine varies wildly from one offense level to the next. Even worse, the ratio is often more severe

for low-level players than it is for bigger dealers. Below are the new ratios:

| LEVEL | RATIO |
|---|---|
| 38 | 33:1 |
| 36 | 33:1 |
| 34 | 30:1 |
| 32 | 33:1 |
| 30 | 70:1 |
| 28 | 57:1 |
| 26 | 25:1 |
| 24 | 80:1 |
| 22 | 75:1 |
| 20 | 67:1 |
| lower | 50:1 |

As the guidelines are only advisory, the Court should not assign a ratio any higher than the lowest ratio of the bunch, which is 25 to 1. The Court should make the independent assessment – under 18 USC § 3553(a) and pursuant to the district court's duty under Booker and Rita – that an advisory guideline range based on a higher ratio reflects "unsound judgment" on the part of the Commission and should not be followed.[1]

---

[1]*See*, Rita v. United States, 127 S. Ct. 2465, 2468 (2007) (district court may conclude that the guideline sentence fails to reflect § 3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless."); *Id*. at 2463 (The presumption is not binding, does not place any burden of persuasion or proof on either party, and does not reflect greater deference to the Commission's fact-finding than to that of the district court, but merely "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case," which is a "double determination").

For a more thorough discussion of how Rita can be used to support this argument, *see* Amy Baron-Evans & Dan Kaplan, *What is Lovely (and Not so Lovely) about Rita: Implications for Gall, Kimbrough, and Future Cases* (September 12, 2007), available at www.fd.org/pdf_lib/Rita_Memo_9.12.07.pdf.

The Commission also issued an advisory policy statement advising that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 USC § 3582(c)(2) if...an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." As noted below, the legality of this change to § 1B1.10 is in serious dispute, particularly because it is inconsistent with § 3582(c)(2) (permitting review of sentences "based on" a now-reduced sentencing range).

### C.   Mr. Thompson's Offense Level Under the Amended Crack Guidelines

Absent the application of the career offender guidelines, Mr. Thompson's sentence under the amended § 2D1.1 would be significantly lower than what was originally imposed. He pleaded guilty to conspiracy to possession of between not less than 150 but not more than 500 grams of crack. His base offense level therefore is 32, which drops to 29 because of his acceptance of responsibility. That equates to a Guidelines range of 151-188 months' imprisonment. This Court amended the original judgment to an adjusted concurrent sentence from 188 months, the bottom of the original guideline range. If the Court applies the same formula to the amended guideline range, then the potential

difference of 16 months from the bottom of the amended guideline range equals 135 months.

In light of the amendments to §2D1.1 and the reasons that underlie them, Mr. Thompson moves this Court for an appropriate reduction in his term of imprisonment and his term of supervised release.

### D. The Supreme Court's Pertinent Rulings in Kimbrough and Gall

Shortly before the Sentencing Commission made the amended USSG § 2D1.1 retroactive, the Supreme Court issued its decisions in Kimbrough v. United States and Gall v. United States. Both Kimbrough and Gall reaffirm the Supreme Court's decision in Booker v. United States, 543 U.S. 220 (2005), that the Sentencing Guidelines are merely advisory. Perhaps more importantly for this case, each decision offers crucial guidance on the extent of sentencing courts' discretion to deviate from the advisory Sentencing Guidelines.

In Kimbrough, the Supreme Court made clear that the 100-to-1 crack/cocaine ratio was, like the rest of the Guidelines, purely advisory. See, 128 S. Ct. at 564. The Court then went on to point out that the crack guidelines were less deserving of district court deference because the Commission did not formulate the crack/powder differential through its usual mechanism of conducting empirical research into sentencing

outcomes and then calibrating offense levels and criminal history categories to best serve the goals articulated in 18 USC § 3553(a):

> The crack cocaine Guidelines . . . do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of empirical data and national experience. Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses "greater than necessary" in light of the purposes of sentencing set forth in § 3553(a). Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, even in a mine-run case.

*Id.* at 575 (internal citations and quotation marks omitted). And, as the Supreme Court noted, the creation of the crack guidelines in this manner resulted in Sentencing Guidelines that ultimately harm the goals of sentencing. *See, Id.* at 568 (approving the Commission's analysis that the crack/powder differential "overstates both the relative harmfulness of crack cocaine and the seriousness of most crack offenses . . . is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low level dealers . . . [and] fosters disrespect for and lack of confidence in the criminal justice system.") (internal quotation marks omitted).

The Supreme Court grounded this ruling in the research and recommendations of the United States Sentencing Commission itself, which has acknowledged repeatedly that the crack/powder disparity in the Guidelines is flawed. *Id.* at 568 (citing Commission's conclusion in its 2002 report to Congress that the disparity "fails to meet the sentencing objectives set forth by congress in both the Sentencing Reform Act and the 1986 [Anti-Drug Abuse] Act.").[2]

Indeed, based on its research, the Commission has recommended at different times that Congress reduce the disparity to 20 to 1, 5 to 1, and as low as 1 to 1. *Id.* at 569 (citing Commission's 1995, 1997 and 2002 reports). Most recently, when it submitted its proposed two-level reduction in the crack Guideline, it recommended that Congress further "substantially" reduce the ratio. *Id.* at 569 (citing Commission's 2007 report).

Kimbrough also characterizes this amendment to § 2D1.1 as "modest," noting that it "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1" – well above the Commission's recommended ratios. *Id.* at 573. It is, the Court said, "'only . . . a partial remedy' for the

---

[2] Among the flaws identified by the Commission are: (1) "the assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution;" "the 'anomalous' result that 'retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" and "the severe sentences . . . imposed 'primarily upon black offenders.'" *Id.* at 568.

problems generated by the crack/powder disparity." *Id.* at 569
(citing Commission's 2007 report). Thus, the Court found, "[t]he
amended Guidelines still produce sentencing ranges keyed to the
mandatory minimums in the 1986 Act," which it identified as the
source of the unwarranted disparity between the crack and powder
cocaine Guidelines to begin with. *Id.* at 569 n.10.

The Supreme Court consequently ruled that sentencing courts
not only may deviate from the crack/powder differential for
policy reasons alone, *see, Id.* at 570 (endorsing the
government's concession that "courts may vary [from Guidelines
ranges] based solely on policy considerations, including
disagreements with the Guidelines.") (Insertion in original)
(internal quotation marks and citations omitted), but must
deviate from the Guidelines where the Guidelines disserve the
goals of sentencing. The Court emphasized that the parsimony
provision of § 3553(a) – its requirement that sentences be
"sufficient, but not greater than necessary" to achieve the
goals of sentencing – is the "overarching instruction" of the
sentencing statute, and that sentencing courts must vary from
the advisory Guidelines as they believe is necessary to follow
its ultimate command. *See, Id.* at 576.  Accord <u>Gall</u> at 596-97
(reiterating that the district courts may not apply a
presumption of reasonableness to the Guidelines, but instead

"must make an individualized assessment based on the facts presented.").

### E. The Sentencing Commission's Criticism of the Career Offender Guidelines for Non-Violent Offenders

The Commission's critiques of injustices in the Sentencing Guidelines have not been limited to the crack/powder differential. In 2004, the United States Sentencing Commission released its report, "Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform." In it, the Commission sharply criticized the Career Offender guidelines as disserving the goals of sentencing where, as here, the defendant's career offender status is based solely on convictions as a low-level drug dealer:

> Unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else.

United States Sentencing Commission, "Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing

Reform" at 134 (2004), http://www.ussc.gov/15_year/15year.htm (hereinafter "Fifteen Year Report").

In fact, the Commission noted, its analysis of outcomes for individuals who qualified for career offender treatment based only on prior drug trafficking crimes showed that low-level drug dealers sentenced as career offenders had rates of recidivism closely similar to those of drug trafficking defendants sentenced without the career offender enhancement. *See, Id.* In other words, the non-career offender sentences and the career offender sentences achieved the same corrections goals. Career offender sentences for such defendants are, as a result, "greater than necessary."

As with the 100:1 differential, the Commission pinpointed the way that § 4B1.1 was created as the source of this disconnect between the punishments prescribed thereby and the goals of sentencing. The Commission did not formulate the Career Offender Guidelines through its usual mechanism of conducting empirical research into sentencing outcomes and then calibrating offense levels and criminal history categories to best serve the goals articulated in 18 USC § 3553(a). Instead, it simply set the guideline ranges as close as was possible to the statutory maximum:

> The SRA directs the Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized by

statute" for offenders who are at least 18 years old and who have been convicted of a crime of violence or a drug trafficking offense, and who previously have been convicted of two or more such offenses. The Commission implemented this directive by creating USSG § 4B 1.1, the "career offender guideline."

*Id.* As a result, the Commission determined that the career offender guidelines were counterproductive in sentencing where a defendant's predicate offenses are for drug trafficking crimes. *See, Id.*

## ARGUMENT

This Court should exercise its discretion to grant Mr. Thompson's § 3582(c) motion because the enormous disparity between Mr. Thompson's unenhanced, amended Guidelines range and his original, Career Offender-enhanced sentence counsels a reduction in his sentence. This is especially true in light of the Sentencing Commission's own analysis that the Career Offender provisions under which Mr. Thompson was sentenced should not have applied to him, a low-level drug dealer, for whom the goals of sentencing could have been fulfilled with a lower sentence.

> **A. The Court has Authority to Re-Sentence Mr. Thompson under Section 3582(c), despite the fact that the US Sentencing Commission's revised policy statement regarding USSG 1B1.10 violates 3582(c)(2) by restricting the sentencing court's ability to consider 3553(a) factors in imposing a new sentence..**

1.  ***This Court may reduce Mr. Thompson's sentence pursuant to it's § 3582(c) re-sentencing authority despite his previous sentencing as a career offender.***

The Commission has revised § 1B1.10 to purportedly render a sentence reduction "unauthorized" under § 3582(c) if an amendment listed in § 1B1.10(c) "does not have the effect of lowering the defendant's applicable guideline range." For the reasons set forth in detail above, this revision to § 1B1.10(c) is not only advisory, it is inconsistent with the Supreme Court's decisions in <u>Kimbrough</u> and <u>Gall</u>. Moreover, the Court must disregard the advice of the revised § 1B1.10(c) because, as applied to this case, § 1B1.10 runs afoul of both §§ 3582(c) and 3553(a). The revised § 1B1.10 violates § 3582(c) because when it first sentenced Mr. Thompson, the Court apparently considered the difference between his non-enhanced Guidelines range and his career offender Guidelines range. It then imposed a bottom-of-the-Guideline sentence based upon a Total Offense Level of 31, Criminal History category VI, resulting in a sentencing range of 188 to 235 months imprisonment with an adjust pursuant to USSG 5G1.3 (b). The Court therefore "sentenced [Mr. Thompson] to a term of imprisonment based on a sentencing range" – Mr. Thompson's initial Guidelines calculation under § 2D1.1 – "that has subsequently been lowered by the Sentencing Commission." 18 USC § 3582(c). § 1B1.10 violates § 3553(a) because it purportedly

requires sentencing courts to ignore an applicable § 3553(a) factor, namely, "the extent of the difference between a particular sentence and the recommended Guidelines range." <u>Gall</u>, 128 S. Ct. at 591. As the Supreme Court said in <u>Gall</u>, that difference is "surely relevant" to a sentencing decision. *Id*.

Now that the difference between Mr. Thompson's original sentence and his recommended Guidelines range is even greater than before, this Court must be free under § 3582(c)(2) to conduct a full <u>Booker</u> resentencing that, in particular, addresses whether the sentence under the career offender guideline is "sufficient but not greater than necessary" See, § 3553(a) in light of the crack amendment.

> **B. The limitations on § 3582(c)(2) proceedings instruct courts to treat § 1B1.10 and §2D1.1 as mandatory in violation of <u>Booker</u> and <u>Kimbrough</u>**

> **1. The changes to § 2D1.1 and the drug equivalency tables trigger this Court's full authority under § 3582(c), no matter the Commission's statements to the contrary.**

As noted above, this Court's authority to reopen and reduce a sentence under 18 USC § 3582(c) is triggered when the original sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to" its power to "review and revise . . . the guidelines." The amendments to § 2D1.1 clearly fit within that description. Effective November 1,

2007, the Commission lowered sentencing ranges for crack offenses by two levels because, as set forth above, it found that the crack guideline over-punished crack offenders and created unwarranted disparity between them and other drug offenders. On December 11, 2007, the Commission voted to make that amended guideline retroactive. Its vote was all that is necessary to trigger this Court's authority to revisit a sentence under § 3582(c).

Now that this Court has the authority to revisit Mr. Thompson's sentence, it must ensure that the new sentence he receives is consistent with the § 3553(a) factors and, to the extent that they are consistent with the § 3553(a) factors, the Commission's policy statements. *See*, 18 USC § 3582(c); Kimbrough, 128 S. Ct. at 575. But those policy statements – including any suggestion that (1) the relief that Courts may grant is limited to a two-level reduction and (2) defendants sentenced as career offenders cannot seek relief – are merely advisory. *See*, e.g., United States v. Hicks, 472 F.3d 1167, 1170 (9th Cir. 2007) ("Because a mandatory system is no longer an open choice, district courts are necessarily endowed with the discretion to depart from the guidelines when issuing new sentences under § 3582(c)(2)") (citing Booker v. United States, 543 U.S. at 263) (internal quotation marks omitted); United States v. Jones, 2007 WL 2703122 (D. Kan. Sept. 17, 2007);

United States v. Forty Estremera, 498 F. Supp. 2d 468, 47 1-72 (D.P.R. 2007). The Court must ignore them where, as here, abiding by them would frustrate the sentencing goals of § 3553(a). *See,* § 3582(c).

This is especially true in light of the Commission's own recognition that the revisions to the crack guidelines only partially address the fact that the crack guidelines frustrate the goals of sentencing. Accord Kimbrough, 128 S. Ct. at 569 (quoting favorably the Commission's analysis that crack amendment is "only . . . a partial remedy"). Any attempt by the Commission to limit the courts' ability to achieve a full correction of crack guidelines' flaws therefore must fail.

Furthermore, treating the amended §§ 1B1.10 and 2D1.1 as setting the mandatory lower limits of this court's re-sentencing discretion violates both Booker and Kimbrough. Booker made clear that the guidelines cannot be applied as mandatory in some circumstances, and not others. *See,* Booker, 543 U.S. at 266 ("[W]e do not see how it is possible to leave the Guidelines as binding in other cases. For one thing, the Government's proposal would impose mandatory Guidelines-type limits upon a judge's ability to reduce sentences, but it would not impose those limits upon a judge's ability to increase sentences. We do not believe that such one-way levers are compatible with Congress' intent.") (internal punctuation marks and citation omitted)

(emphasis in original). And again in Kimbrough, the Court rejected any argument that § 2D1.1, and, more specifically, the crack guideline, can be interpreted in any way that renders it effectively mandatory: "[U]nlike Booker, the cocaine Guidelines, like all other Guidelines, are advisory only." *Id.* at 564. Thus, § 1B1.10, too, is purely advisory.

   C. **The limitations on § 3582(c)(2) violate the sentencing commission's own statutory obligations under its enabling statutes (28 USC 991 and 994).**

The sentencing commission has already acknowledged that the crack amendment is a modest, interim measure that does not fully rectify the "failure of the crack guideline to meet the sentencing objectives set forth by Congress" in § 3553(a)(2). In revising § 1B1.10 to restrict the court's ability even to consider this acknowledged failure of the guideline when imposing a new sentence under § 3582(c)(2), the commission has violated its obligation under 28 USC 994(a)(2). Section 994(a)(2)(C) requires the USSC to write policy statements regarding "the sentence modification provisions set forth in section 3582(c)" that "would further the purposes of sentencing set forth in Section 3553(a)(2)." It has also violated its obligations to avoid unwarranted sentencing disparities, maintain sufficient flexibility to permit individualized sentences, and reflect advancement in the knowledge of human

behavior as it relates to the criminal justice process.  28 USC 991(b) (1) (A)-(C).

If Guideline commentary "is at odds" with the plain language of 28 USC 994, the guideline commentary "must give way."  *See,* United States v. LaBonte, 70 F3d 1396, 1412 (1st Cir. 1995) (rejecting the government's argument that a 3583(c) (2) resentencing is inappropriate where the defendant's original sentence falls within the amended Guidelines range because "we cannot be confident that, faced with a different range of options, the district court's choice will remain the same"), *overruled on other grounds, 520 U.S. 751 (1997).*  Thus, in addition to violating the remedial holding in Booker, the proposed amendments are void as an improper exercise of commission authority, and should be rejected for that reason as well.

To the extent that revised § 1B1.10 purports to interpret § 3582(c)(2), it is also void under Stinson v. United States, 508 U.S. 36, 38 (1993) which rejected as a violation of separation of powers the notion that the commission commentary should be viewed as construing the statutes that the commission administers.  *Id.*  Stinson held that "the functional purpose of commentary is to assist in the interpretation and application of the Guidelines."  *Id. at 45.*  In contrast, the clear intent of the revisions to § 1B1.10 is to cabin and control the judicial

interpretation of § 3582(c)(2), which in turn violates separation of powers principles. <u>Marbury v. Madison</u>, 5 U.S. 137 (1803).

## CONCLUSION

The Court should adjust Mr. Thompson's sentencing guideline range downward to 135 months' imprisonment. It should then hold a hearing at which Mr. Thompson is present to consider whether to further reduce Mr. Thompsons's sentence for the reasons set forth herein.

**A. Based on the Amendment to § 2D1.1 Mr. Thompson's Offense Level should be Reduced from 34 to 32, and his base Guidelines Range Reduced from 188-235 Months to 151-188 Months.**

As described above, application of the amendments to the crack cocaine guidelines in this case, results in a decrease of the total offense level from 34 to 32, and a decrease in the resulting guideline range from 188-235 months to 151-188 months. Furthermore, the Court should now reduce Mr. Thompson's sentence so as to account for both his lower advisory Guidelines range and the reduction later made pursuant to the Court's adjusted concurrent sentence, refuse to enhance his sentence pursuant to the career offender guideline, § 4B1.1, and order a modification of his release date.

1. **Mr. Thompson's base sentence should be re-calculated without the career offender enhancement.**

All of the facts of this case, viewed in light of the Sentencing Commission's criticisms of the career offender guidelines and the 100-to-1 crack/powder differential, as well as the sentencing factors of § 3553(a), militate in favor of granting the relief that Mr. Thompson seeks. Mr. Thompson was a low-level drug dealer. His prior convictions were for small-time, non-violent crimes, primarily drug offenses. As the Sentencing Commission itself has said, the career offender guidelines do not achieve the goals of sentencing for defendants like Mr. Thompson. *See*, Fifteen Year Report at 133-134. To the contrary: for Mr. Thompson and those in his position, career offender treatment succeeds only in creating punishments that are not only "greater than necessary" to achieve the goals of sentencing, but which frustrate the goals articulated in § 3553(a) and diminish confidence in the corrections system. *See*, *Id.* Moreover, even assuming that the Commission itself had not condemned the use of the career offender guidelines in cases like this one, the career offender guidelines would command no deference from this court. They were created through the same misguided process as the 100-to-1 crack/powder differential, and, pursuant to <u>Kimbrough</u> and <u>Gall</u>, this court need not accord them any weight.

-26-

At the time of Mr. Thompson's original sentence, this Court was required to treat the Guidelines as mandatory. It consequently treated him as a career offender and imposed a sentence that was, as the Commission said in 2004 and the Supreme Court said in December 2007, greater than necessary to achieve the goals of sentencing. As the guidelines are now advisory, this Court therefore has the authority, while resentencing Mr. Thompson pursuant to the retroactive crack amendment, to re-sentence Mr. Thompson to a term of imprisonment that is "sufficient but not greater than necessary" to achieve the goals of sentencing; that is, which excludes the career offender enhancement. 18 USC § 3553(a).

## REQUEST FOR HEARING

Under the Guidelines, a defendant has a right to a hearing whenever any factor important to the sentencing determination is "reasonably in dispute." USSG § 6A1.3. Even under old § 1B 1.10, if a court intended to rely upon facts not found at the initial sentencing in deciding a § 3582(c)(2) motion, the defendant was entitled to notice and a hearing. *See e.g.,* United States v. Byfield, 391 F.3d 277, 280-81 (finding abuse of discretion in failing to order evidentiary hearing where defendant's assertions in § 3582(c)(2) motion raised "enough of a smidgeon to put the matter 'reasonably in dispute.'"); Quesada

Mosquera v. United States, 243 F.3d 685, 686 (2d Cir. 2001);

United States v. Allison, 63 F.3d 350, 351 (5th Cir. 1995). Now

that revised § 1B1.10 advises that courts consider such facts in

every case, there must also be a hearing at which the defendant

can challenge the government's evidence and present his or her

own. *Cf.* United States v. DeMott, F.3d, 2008 WL 124188 (2d Cir.

Jan. 15, 2008).  Mr. Thompson therefore requests a hearing in

this matter.

He further requests that he be present for any hearing on

this motion. Although a defendant's presence at a § 3582(c)(2)

hearing is not required, the defendant should be allowed to

attend, particularly if the Court will need to resolve factual

disputes. *See,* United States v. Forty Estremera, 498 F.Supp.2d

468, 472 (D. P.R. 2007) (ordering defendant's transfer to

jurisdiction for hearing on § 3582(c)(2) after determining

defendant's eligibility and that Booker advisory regime will

apply to the resentencing). *Cf.* DeMott, 2008 WL 124188

("[D]istrict court violated Day's right to be present at

resentencing, his right to counsel at resentencing, and his

right to notice that the court intended to impose an adverse

non-Guidelines sentence.").

Respectfully Submitted,
TERRENCE THOMPSON, DEFENDANT,


By: */s/ DAVID J. WENC*_____
     David J. Wenc, His Attorney
     Wenc Law Offices
     546 Halfway House Road
     P.O. Box 306
     Windsor Locks, CT  06096-0306
     Tel. (860) 623-1195
     Fed. Bar ct00089
     david.wenclaw@sbcglobal.net


## CERTIFICATION

I hereby certify that on August 14, 2008, I served copy of the foregoing document by U.S. mail, first-class, postage prepaid, to:

Chambers of the Honorable Janet C. Hall
United States District Court
915 Lafayette Boulevard
Bridgeport, CT  06604

Office of the U.S. Attorney
915 Lafayette Boulevard
Bridgeport, CT  06604

Terrance Thompson, Inmate #14264-014
c/o FCI Allenwood Medium
Federal Correctional Institution
P.O. BOX 2000
White Deer, PA  17887


*/S/ DAVID J. WENC*_____
David J. Wenc, Esq.