UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:00CR263(JCH) |
| | : | |
| v. | : | |
| | : | |
| TERRENCE THOMPSON | : | AUGUST 28, 2008 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)**

On or about June 17, 2008, the Court issued an Order directing the defendant to show cause why he qualifies for a reduction of his sentence under the new crack Guidelines, pursuant to 18 U.S.C. § 3582(c)(2) and 994(u), as well as Amendment 706 to the United States Sentencing Guidelines. In its Order to Show Cause, the Court stated that it had reviewed a supplemental Presentence Report prepared by the Probation Office suggesting that the defendant is not eligible for a sentence reduction because the defendant's guideline range was not driven by crack quantity, but rather his status as a career offender. The government agrees that the defendant is not eligible for a reduction in his sentence.

On August 14, 2008, the defendant filed a motion for reduction of his sentence and a memorandum in support. In his pleadings, the defendant argues, among other things, that he should be entitled to a sentence reduction, notwithstanding his having been sentenced as a career offender because: (1) the Sentencing Commission's limitations on retroactive application under U.S.S.G. §§ 1B1.10 are themselves advisory under *Booker v. United States*, 543 U.S. 220 (2005); and *Kimbrough v. United States*, 128 S. Ct. 558, 563 (2007); and (2) the court "apparently considered the difference between Mr. Thompson's non-career offender Guideline range and his career offender Guideline range when imposing sentence on Mr. Thompson," and therefore the

defendant's sentence was "based on" the crack guidelines, *see* Def.'s Memo at 5-6.  The defendant also argues that the defendant is entitled to a full hearing on his motion at which he be present.

For the reasons stated herein, the Court should not issue an amended judgment or alter the defendant's incarceration term.  First, in this case, the defendant was a career offender and the guideline range was not governed at all by the crack cocaine guidelines provided for under U.S.S.G. § 2D1.1.  Thus, the defendant does not benefit at all from the November 1, 2007 amendments to that guideline section.  Because the defendant was sentenced as a career offender, the November 1, 2007 amendments to the crack cocaine guidelines do not alter or affect his guideline range and he is not eligible for a reduction in his sentence.

Second,  *Booker* and *Kimbrough* and not properly applied in a Section 3582(c)(2) proceeding as a basis for reducing a sentence below the amended guideline range.  Section 3582(c)(2) allows a court to reduce a sentence based on a retroactive guideline amendment only as authorized by the Sentencing Commission, and the Commission has limited the extent of such a reduction to the application of the amended guideline range or a reduction comparable to the extent of a previously granted reduction below the earlier guideline range.

Third, the question of the relevance of *Booker* and *Kimbrough* is not even presented in this case.  The governing statute allows a reduction only "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . ."  As explained below, because the necessary trigger never occurred in this case, the question of whether *Booker* or *Kimbrough* allow for a greater reduction at resentencing never arises.

Fourth, the defendant's argument that the court "apparently considered the difference between Mr. Thompson's non-career offender Guideline range and his career offender Guideline range when imposing sentence on Mr. Thompson," and therefore the defendant's sentence was "based on" the crack guidelines is curious because there was no difference at the original sentencing between those ranges.  As explained below, the defendant's Guideline range at the original sentencing, under both a non-career offender Guideline range and his career offender range, was 188 to 235 months.  The Court's imposition of a sentence of 172 months was "an adjusted concurrent sentence from 188 months," because at the time of the original sentencing the defendant was a state-court prisoner and the Court's sentence was to ensure that the defendant received credit for 16 months of pre-trial incarceration he had already spent in state custody.

Finally, the defendant's argument that he has a right to appear before the Court in connection with his motion for reduction of sentence is directly refuted by the relevant policy statement, the Federal Rules of Criminal Procedure, and the case law addressing this issue. Section 1B1.10(a)(3) clearly states that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant."  In addition, Rule 43(b)(4) explicitly provides that a defendant "need not be present" when the proceeding involves a reduction of sentence under 18 U.S.C. § 3582(c).  Likewise, as set forth below, the federal courts of appeal to address this issue have uniformly held that a defendant has no constitutional or statutory right to be present in connection with a motion filed under Section 3582(c).

For these reasons, and as explained in greater detail below, the defendant is not eligible for a reduction in his sentence because he was sentenced as a career offender.

I.    **BACKGROUND**

On April 23, 2002, the defendant, Terrence Thompson ("Thompson") pleaded guilty to

conspiracy to possess with intent to sell cocaine base in violation of 21 U.S.C. §§ 846 &

841(b)(1)(B).  In connection with his guilty plea, the defendant stipulated to his status as a career

offender as follows:

> The government and the defendant stipulate and agree that the defendant is a career
> offender pursuant to U.S.S.G. § 4B1.1, on the basis of his criminal history.  It follows
> that, assuming a three level reduction based on the defendant's acceptance of
> responsibility, the defendant's Guidelines range is 188 to 235 months in prison.  As
> noted above, the defendant is subject to a mandatory minimum sentence of five years
> in prison under 21 U.S.C. §§ 841(b)(1)(B).

On June 7, 2002, the United States Probation Office disclosed the presentence report

("PSR").  Consistent with the parties' plea agreement, the PSR calculated the defendant's

Guidelines range to be 188 to 235 months in prison. (PSR ¶ 77.)

The defendant's exposure to a sentencing range of 188 to 235 months in prison was the

same under both career-offender and non-career offender provisions.  Thompson had engaged in

a pattern of crack cocaine distribution totalling, as noted in the PSR, 150 to 500 grams (PSR ¶

33).  In fact, in January 2001 alone, the defendant had engaged in multiple transactions with a

cooperating witness, who represented just one of his many customers.  Although the defendant

may not have been a high-level participant in the Burden Organization, Thompson was, however,

a significant street-level drug trafficker who, through multiple transactions, sold nearly a half a

kilogram of cocaine base to numerous drug users in Norwalk.

In addition, Thompson fell squarely into Criminal History Category VI independent of the

application of the career offender provisions.  At the time of his original sentencing, Thompson

had twelve convictions, including six felonies, for a total of sixteen criminal history points, well above the thirteen points necessary to implicate Category VI. (PSR ¶¶ 41-54).

Furthermore, the defendant's record revealed an appreciable propensity to engage in violent activity. In 1990, the defendant was involved in harassing a husband and wife and their infant, throwing rocks at their car. (PSR ¶ 42). In 1992, the defendant was convicted of kicking down the door of his ex-girlfriend's apartment and shoving her. (PSR ¶ 44). In 1993, the defendant assaulted a police officer, who was responding to the scene of a barroom fight. In this instance, the defendant and the police fought until the defendant was subdued by a police dog. (PSR ¶ 46).

In the later half of the 1990s, the defendant's pattern of violent conduct continued, notwithstanding arrests, convictions and his serving jail time. In 1996, the defendant again engaged in violent conduct – one of the victims of which was his two year-old son. The police responded to a call concerning the defendant's abuse of his child. Upon arriving at the scene, the defendant threatened the police with a lamp until eventually he was handcuffed. (PSR ¶ 49). In 2000, the defendant threatened two Fairfield law enforcement officers, stating "I know where you live . . . I'm going to crush your child's skull" and threatening to split open the head of one of the officers. (PSR ¶ 53).

At the time of the original sentencing, the defendant was also no stranger to the prison system. He had served at least five separate jail sentences. Over the span of his criminal career, those sentences had escalated from weeks to months to approximately a year and a half in 1997 and 1998 and six months in 2000. Even while incarcerated, the defendant engaged in various forms of criminal conduct. The defendant amassed 15 disciplinary tickets from the Department

of Corrections for a range of activities, including possession of contraband, threatening, destruction of property, and assaulting corrections officials. (PSR ¶ 49; Attachment A).

In short, the defendant had continuously committed violent acts and drug crimes for more than a decade. He had shown an utter disrespect for the law, accumulating convictions for failures to appear and contempt of court, threatening the police, and routinely violating conditions of pretrial release and probation. And while the defendant's criminal record presented a classic example of a career offender, his sentencing range of 188 to 235 months also reflected a straight application of his base offense level and his sixteen criminal history points. The range of 188 to 235 months, therefore, was fully justified under the circumstances.

During sentencing proceedings on July 24, 2002, the Court adopted the factual findings of the PSR and in a straight, underlying Guidelines analysis, it similarly concluded that Thompson's total offense level was 31 (base offense level of 34, with three points for acceptance of responsibility). The Court also determined that Thompson's Criminal History Category was VI. As noted in the defendant's crack reduction motion, "Mr. Thompson did not dispute this initial calculation of his offense level and Criminal History Cateogy. If he had been sentenced pursuant to this non-career offender offense level, Mr. Thompson's Guidelines range would have been 188-235 months." *See* Def's Memo at 7.

Consistent with the PSR and the parties' stipulation, the Court went on to independently determine, however, that based on his prior convictions, Thompson was subject to the Career Offender provisions of U.S.S.G. § 4B1.1. After rejecting various arguments for a downward departure, the Court determined that Thompson was properly subject to the Career Offender provisions of U.S.S.G. §4B1.1, that his base offense level under 4B1.1 was 34, that the offense

6

level would be reduced three points for acceptance to 31, and that Thompson was in Criminal History Category VI, resulting in a Guidelines range of 188 to 235 months.  The Court ultimately sentenced Thompson as a Career Offender to 172 months of incarceration – "an adjusted concurrent sentence from 188 months" reflecting 16 months of pre-trial incarceration that Thompson had already spent in state custody.

Because Thompson was sentenced as a Career Offender and the crack Guidelines did not drive his sentence at all, the November 1, 2007 amendments to the crack cocaine guidelines did not alter or affect his guideline range and accordingly, he is not eligible for a reduction in his sentence.

## II.    DISCUSSION

On November 1, 2007, the Sentencing Commission amended the cocaine base guidelines set forth in U.S.S.G. § 2D1.1(c).  The amendment in question is Amendment 706, effective November 1, 2007, which reduced the base offense level for most crack cocaine offenses.[1]  In Amendment 706, the Commission generally reduced by two levels the offense levels applicable to crack cocaine offenses.  The Commission reasoned that, putting aside its stated criticism of the 100:1 ratio applied by Congress to powder cocaine and crack cocaine offenses in setting statutory mandatory minimum penalties, the Commission could respect those mandatory penalties while still reducing the offense levels for crack offenses.  *See* U.S.S.G., Supplement to App. C, Amend. 706.  Previously, the Commission had set the crack offense levels in Section 2D1.1 above the range which included the mandatory minimum sentence.  Under the amendment, the

---

[1]  Amendment 706 was further amended in the technical and conforming amendments set forth in Amendment 711, also effective November 1, 2007.

Commission has set the offense levels so that the resulting guideline range includes the mandatory minimum penalty triggered by that amount, and then set corresponding offense levels for quantities which fall below, between, or above quantities which trigger statutory mandatory minimum penalties. For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment. See 21 U.S.C. § 841(b)(1)(B). Therefore, the revised guideline applies an offense level of 24 to a quantity of cocaine base ("crack") of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The final result of the amendment is a reduction of two levels for each of the ranges set in the guidelines for crack offenses. At the high end, the guideline previously applied offense level 38 to any quantity of crack of 1.5 kilograms or more. That offense level now applies to a quantity of 4.5 kilograms or more; a quantity of at least 1.5 kilograms but less than 4.5 kilograms falls in offense level 36. At the low end, the guideline previously assigned level 12 to a quantity of less than 250 milligrams. That offense level now applies to a quantity of less than 500 milligrams.

> **A.    THE DEFENDANT IS NOT ELIGIBLE FOR A REDUCTION IN HIS SENTENCE BECAUSE HIS GUIDELINE RANGE WAS DETERMINED BASED ON HIS STATUS AS A CAREER OFFENDER.**

The defendant is not eligible for a reduction in his sentence because his guideline range was based not on the crack guidelines but on his status as a career offender.

Indeed, in his written plea agreement, Thompson *stipulated* to his status as a career offender, and to the applicable Guideline range of 188-235 months imprisonment. During sentencing proceedings on July 24, 2002, this Court similarly concluded that the defendant was a

career offender.  The Court adopted the factual findings of the PSR, and determined that, under §
4B1.1, the defendant's total offense level was 31, his criminal history category ("CHC") was VI,
and his resulting Guideline range was 188-235 months' imprisonment.  The Court imposed a
sentence of 172 months' incarceration – the low end of the applicable and agreed upon
Guidelines range, minus 16 months of incarceration the defendant had already spent in state
custody.

The defendant therefore cannot gain any relief under 18 U.S.C. § 3582(c) because his
guideline range at sentencing was governed, not by the quantity of cocaine base involved in his
offense, but by his career offender designation.  The career offender provision is unaffected by
Amendment 706, and the defendant's offense level remains exactly what it was at the time of
sentencing.

Pursuant to 18 U.S.C.  § 3582(c)(2), a defendant's sentence may only be reduced when he
was "sentenced to a term of imprisonment based on a sentencing range that has subsequently
been lowered by the Sentencing Commission."  Further, under the statute, a reduction is allowed
only when "such a reduction is consistent with the applicable policy statements issued by the
Sentencing Commission."  In its revisions to Section 1B1.10, the Commission, consistent with
the statutory directive that a reduction should occur only where the defendant's sentencing range
was lowered, made clear that a sentencing court is not authorized to reduce a defendant's
sentence when a retroactive amendment does not result in lowering the applicable sentencing
range for the defendant.  Specifically, subsection (a)(2)(B) states: "A reduction in the defendant's
term of imprisonment is not consistent with this policy statement and therefore is not authorized
under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not have the
effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10 (a)(2)(B)

(emphasis added).

In this case, the defendant's sentence did not rest on the provision regarding crack cocaine in Section 2D1.1, which has been amended. Under the version of Section 2D1.1 in effect at the time of sentencing, the defendant's base offense level for the crack offense was 34 (31 with acceptance); that would be reduced to 32 (29 with acceptance) pursuant to Amendment 706. However, the defendant was sentenced as a career offender, based on his prior convictions for other drug trafficking offenses, and accordingly his base offense level was and remains 34 (31 with acceptance) pursuant to Section 4B1.1. That enhancement was unaffected by Amendment 706, and the defendant's offense level remains exactly what it was at the time of sentencing. Section 1B1.10 directs: "the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10 (b)(1). Accordingly, the defendant may not receive any relief under Section 1B1.10.

Numerous courts that have specifically addressed the career offender scenario have held that a defendant whose sentence was driven by his or her status as a career offender is not entitled to a reduction under the new crack guidelines. *Cf., United States v. Ogman*, No. 06-0203-cr, 2008 WL 925320 (2d Cir. Apr. 7, 2008) (remand for resentencing for possession with intent to distribute cocaine base and for conspiracy to possess cocaine with intent to distribute was not warranted where guidelines range applied to defendant's case was not result of crack ratio, but rather from defendant's status as career offender); *see also, United States v. Gray*, 2008 WL 895012, *2 n.1 (4th Cir. Apr. 2, 2008) (not precedential); *United States v. Bronson*, 2008 WL 539796, *2 (4th Cir. Feb. 27, 2008) (not precedential); *United States v. Tingle*, 2008 WL 1902055 (8th Cir. May 1, 2008); *United States v. Williams*, 2008 WL 762083, *7 (E.D. Ark.

Mar. 18, 2008); *United States v. Turner*, 2008 WL 276581 (W.D. Ark. Jan. 30, 2008); *United States v. McDougherty*, 2008 WL 752597, *4-5 (C.D. Cal. Mar. 18, 2008); *United States v. Lee*, 2008 WL 2357243 (N.D. Cal. June 6, 2008); *United States v. Herrera*, 2008 WL 2438036 (D. Colo. June 16, 2008); *United States v. Gutierrez*, 2008 WL 927564 (D. Conn. Apr. 4, 2008); *United States v. Brantley*, 2008 WL 718143 (M.D. Fla. Mar. 14, 2008); *United States v. Davis*, 2008 WL 660277 (M.D. Fla. Mar. 6, 2008); *United States v. Straughter*, 2008 WL 717686 (S.D. Fla. Mar. 24, 2008); *United States v. Jones*, 2008 WL 717684 (S.D. Fla. Mar. 17, 2008); *United States v. Walton*, 2008 WL 3009901 (C.D. Ill. Aug. 4, 2008); *United States v. McKinney*, 2008 WL 2224899 (S.D. Ill. May 27, 2008); *United States v. Nunnally*, 2008 WL 2266301 (N.D. Ind. June 2, 2008); *United States v. Diaz*, 2008 WL 2036831 (N.D. Iowa May 9, 2008); *United States v. Martin*, 2008 WL 1995090 (D. Kan. May 6, 2008); *United States v. Plater*, 2008 WL 2543435 (D. Md. June 24, 2008); *United States v. Conce*, 2008 WL 2038901 (D. Mass. May 13, 2008); *United States v. Washington*, 2008 WL 660227 (D. Me. Mar. 6, 2008); *United States v. LaFrance*, 2008 WL 447548 (D. Me. Feb. 19, 2008); *United States v. Hayes*, 2008 WL 2444446 (E.D. Mich. June 13, 2008); *United States v. Lewis*, 2008 WL 1968712 (S.D. Miss. May 5, 2008); *United States v. Blackwell*, 2008 WL 2620889 (E.D. Mo. July 1, 2008); *United States v. Rogers*, 2008 WL 2329320 (W.D.N.C. June 5, 2008); *United States v. Ware*, 2008 WL 906410 (D.N.H. Apr. 3, 2008); *United States v. Pizarro*, 2008 WL 351581 (D.N.H. Feb. 8, 2008); *United States v. Taylor*, 2008 WL 697341 (W.D. Okla. Mar. 12, 2008); *United States v. Rivera*, 535 F. Supp. 2d 527 (E.D. Pa. 2008); *United States v. Roman*, 2008 WL 2669769 (E.D. Pa. July 7, 2008); *United States v. Thompson*, 2008 WL 750563 (M.D. Pa. Mar. 19, 2008); *United States v. Strothers*, 2008 WL 2473686 (W.D. Pa. June 19, 2008); *United States v. Wright*, 2008 WL 2078134 (D.S.C. May 15, 2008); *United States v. Freeman*, 2008 WL 2901749 (E.D. Tenn. July

11

22, 2008); *United States v. Jackson*, 2008 WL 892688 (W.D. Va. Mar. 28, 2008); *United States v. White*, 2008 WL 724171 (W.D. Va. Mar. 17, 2008); *United States v. Manns*, 2008 WL 723748 (W.D. Va. Mar. 13, 2008); *United States v. Garcia*, 2008 WL 725025 (E.D. Wash. Mar. 17, 2008); *United States v. Green*, 2008 WL 2705589 (W.D. Wash. July 8, 2008); *United States v. Biami*, 2008 WL 1869108 (E.D. Wis. Apr. 22, 2008) (collecting cases).[2]

Courts have also agreed more generally that where, as here, application of a Guidelines amendment does not result in a different sentencing range, no reduction of sentence may occur. *See United States v. McFadden*, 523 F.3d 839 (8th Cir. 2008) (per curiam) (rejecting motion under crack amendment). *See also United States v. Gonzalez-Balderas*, 105 F.3d 981, 984 (5th Cir. 1997) (although a retroactive amendment reduced the defendant's offense level, the new level (44) still required the sentence of life imprisonment which was imposed, and the district court properly denied the motion summarily); *United States v. Allison*, 63 F.3d 350, 352-54 (5th Cir. 1995) (motion properly denied where the sentence would not be different under new guideline); *United States v. Townsend*, 98 F.3d 510, 513 (9th Cir. 1996) (although a retroactive amendment to the career offender guideline changed the definition of a statutory maximum, the amendment did not benefit the defendant given that the maximum penalty for his offense, bank robbery, was the same under either definition, and thus the guideline range was the same); *United*

---

[2]    *But see United States v. Nigatu*, 2008 WL 926561 (D. Minn. Apr. 7, 2008) (while a defendant sentenced as a career offender does not benefit from the retroactive amendment, the amendment applied in this case, where the district court at the original sentencing hearing did not apply the career offender guideline upon finding that it overstated the defendant's criminal history); *United States v. Poindexter*, 2008 WL 1946821 (E.D. Pa. May 2, 2008) (same); *United States v. Darrell Harris*, 3:97CR00171(RNC), Doc. #40, (D. Conn. May 12, 2008) (same). *But see United States v. Milton Menafee*, 3:04CR138 (JCH), Doc. #2158 (D. Conn. Aug. 5, 2008) (defendant sentenced as a career offender, but who received the benefit of a criminal history of *Mishoe* departure not entitled to crack reduction). This issue is not presented here and these cases are inapplicable to Thompson's case because the Court rejected Thompson's departure requests and he was sentenced as a career offender without any such departure.

*States v. Dorrough*, 84 F.3d 1309, 1311-12 (10th Cir. 1996) (the district court did not abuse its discretion in denying the § 3582(c)(2) motion, where an alternative means of sentencing permitted by the applicable guideline produced the same offense level which applied earlier); *United States v. Armstrong*, 347 F.3d 905, 908 (11th Cir. 2003) (the district court correctly denied the motion, where the defendant's offense level was not altered by the subject of the retroactive amendment); *United States v. Young*, 247 F.3d 1247, 1251-53 (D.C. Cir. 2001) (district court properly denied motion where the sentence was actually based on considerations not affected by the retroactive guideline amendment); *United States v. Jacob*, 2008 WL 1776428 (M.D. Fla. Apr. 18, 2008) (no reduction under crack amendment where range was the same based on different drug (heroin) alone); *United States v. Monroe*, 2008 WL 824304 (W.D. Pa. Mar. 26, 2008) (no reduction warranted under crack amendment where the offense level was based on a more serious murder charge, and remains unchanged).

Because the defendant was a career offender and the guideline range was not governed by the crack cocaine guidelines provided for under U.S.S.G. § 2D1.1, the defendant is not eligible for a reduction in his sentence.

**B.      *BOOKER*, *KIMBROUGH* AND *GALL* DO NOT ALTER THE ANALYSIS AND THEIR RELEVANCE IS NOT PRESENTED IN THIS CASE.**

The defendant argues that U.S.S.G. § 1B1.10 violates 3582(c) by restricting the sentencing court's ability to fully consider 3553(a) factors in imposing a new sentence. The defendant also argues that his client should be entitled to a sentence reduction, notwithstanding his having been sentenced as a career offender, because the Section 1B1.10's limitations are themselves advisory in light of *Booker v. United States*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 563 (2007) and *Gall v. United States*, 128 S. Ct. 588 (2007). In

effect, the defendant argues that *Booker, Kimbrough* and *Gall* allow the court to disregard the limits set by Congress and the Sentencing Commission in connection with the new crack guidelines, to engage in unfettered resentencing without limitation, and to impose a reduction in sentence beyond those limits.

The defendant's claim that *Booker, Kimbrough* and/or *Gall* apply in this proceeding and permit a reduction in sentence beyond the limits set by Congress and the Sentencing Commission, however, is without merit. These decisions may not be applied in a Section 3582(c)(2) proceeding as a basis for reducing a sentence below the amended guideline range. Section 3582(c)(2) allows a court to reduce a sentence based on a retroactive guideline amendment only as authorized by the Sentencing Commission, and the Commission has limited the extent of such a reduction to the application of the amended guideline range or a reduction comparable to the extent of a previously granted reduction below the earlier guideline range. As numerous courts have held in recent months, the defendant's argument fails. *See, e.g., United States v. Clarke*, 2008 WL 1913899, *1 (M.D. Fla. Apr. 28, 2008) (stating that the "argument that Section 3582(c)(2) permits a plenary re-sentencing in accord with *Booker* 'has been roundly rejected;'" quoting *United States v. Crawford*, 243 Fed. Appx. 476 (11th Cir.2007) (not precedential)).

The question of the relevance of *Booker* and its progeny, however, is not even presented in this case. In other cases, to be sure, defendants who are entitled to a sentencing reduction under Section 1B1.10 will argue that, pursuant to *Booker*, the Sentencing Commission's effort to restrict the extent of the reduction is not mandatory (a proposition the government opposes). But here, the issue is not reached, as the defendant fails to qualify pursuant to the statute for any sentencing reduction at all. As explained above, the governing statute allows a reduction only

"in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . ."  Because the necessary trigger never occurred in this case in light of the defendant's career offender status, the question of whether *Booker* allows a greater reduction at resentencing never arises.  In any event, for the benefit of the Court, the government presents its view that *Booker*, and its holding that the guidelines are advisory at an initial sentencing proceeding, has no impact at all at resentencing under Section 3582(c)(2).

> **1.    *Section 3582(c)(2) Limits Sentencing Reductions Based on Retroactive Guidelines to Those Authorized by the Sentencing Commission.***

In 18 U.S.C. § 3582(c)(2), Congress created a "narrow exception to the rule that final judgments are not to be modified."  *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003).  Section 3582(c)(2) permits a sentencing reduction based on a retroactive guideline only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  In the Sentencing Reform Act, Congress specifically delegated to the Sentencing Commission the authority to determine when, and to what extent, a sentencing reduction is allowed.  Under 28 U.S.C. § 994(u), when the Commission amends the guidelines, the Commission "shall specify in what circumstances and by what amounts the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  As the Supreme Court has explained, under this provision, "Congress has granted the Commission the unusual and explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect."  *Braxton v. United States*, 500 U.S. 344, 348 (1991) (citing § 994(u); emphasis omitted).  Thus, under the express statutory language of Section 3582(c)(2) and Section 994(u), the Commission's policy statements that

implement the statute's authorization of retroactive sentence reductions are binding, just as the

statutory restrictions on reductions below a mandatory minimum are binding. *See United States*

*v. Walsh*, 26 F.3d 75, 77 (8th Cir. 1994) ("Congress has made the policy statements set forth in

Section 1B1.10 the applicable law for determining whether a district court has the authority to

reduce a sentence in this situation.").

### 2.    *The Statute and Policy Statements Prohibit a Reduction below the Floor Set by the Sentencing Commission.*

Section 3582(c)(2) does not provide for full resentencing of defendants or permit

reductions in sentence beyond the limits set by Congress and the Sentencing Commission.  In its

recent revision to the policy statement governing sentencing reductions under Section 3582(c)(2),

the Sentencing Commission made clear that proceedings under the statute "do not constitute a

full resentencing of the defendant."  U.S.S.G.§ 1B1.10(a)(3); *see United States v. Bravo*, 203

F.3d 778, 781 (11th Cir.) (Section 3582(c)(2) "'do[es] not contemplate a full *de novo*

resentencing'") (quoting *United States v. Cothran*, 106 F.3d 1560, 1562 (11th Cir. 1997)); *see*

*also United States v. McBride*, 283 F.3d 612, 615 (3d Cir. 2002); *United States v. Jordan*, 162

F.3d 1, 4 (1st Cir. 1998); *United States v. Torres*, 99 F.3d 360, 361 (10th Cir. 1996).

Rather than authorizing a full reexamination of a defendant's sentence, the Sentencing

Commission has placed explicit limits on the extent of a sentencing reduction permissible under

Section 3582(c)(2).  Section 1B1.10(b)(1) directs that "[i]n determining whether, and to what

extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and

this policy statement is warranted, the court . . . shall substitute only the amendments listed in

subsection (c) for the corresponding guideline provisions that were applied when the defendant

was sentenced and shall leave all other guideline application decisions unaffected."  U.S.S.G. §

16

1B1.10(b)(1).  Section 1B1.10(b)(2) sets out specific limits on the extent of sentencing

reductions, providing that, with one exception, "the court shall not reduce the defendant's term of

imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than

the minimum of the amended guideline range determined under subdivision (1)."  U.S.S.G. §

1B1.10(b)(2)(A).  The sole exception is set forth in Section 1B1.10(b)(2)(B), which provides that

if the defendant's "original term of imprisonment was less than the term of imprisonment

provided by the guideline range applicable to the defendant at the time of sentencing, a reduction

comparably less than the amended guideline range determined under subdivision (1) may be

appropriate."[3]  U.S.S.G. § 1B1.10(b)(2)(B); *see id.*, app. note 3 (if defendant's original sentence

was a downward departure of 20% below guideline range, reduction to term that is 20% below

amended guideline range would be a "comparable reduction").  Thus, the Commission,

consistent with the authorization provided by Congress, has set a floor below which a reduced

sentence may not fall.  In short, 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 are narrow

provisions which permit a limited reduction of sentence, while prohibiting a complete

reevaluation of the sentence.  *See, e.g., United States v. Hasan*, 245 F.3d 682, 685-86 (8th Cir.

2001) (en banc) (reduction below the amended guideline range is not permitted); *Bravo*, 203 F.3d

at 781 (court was not permitted to "depart downward . . . to an extent greater than that authorized

under Section 3582(c) based on the amended guideline provision").

Thus, as the court reasoned in *United States v. Julien*, 2008 WL 1933340 (D. Me. May 5,

2008), the governing statute, in providing that sentencing reductions must be "consistent with

---

[3]  Section 1B1.10(b)(2)(B) further provides that if the defendant's original sentence "constituted
a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543
U.S. 220 (2005), a further reduction generally would not be appropriate."

applicable policy statements issued by the Sentencing Commission," creates a jurisdictional bar on sentences which exceed the scope of the reductions authorized by the Commission. *Id.* at *1.

### 3. *Booker Did Not Affect the Limits on Sentencing Reductions under Section 3582(c)(2).*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sixth Amendment, as construed by the Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), applied to the federal Sentencing Guidelines, under which the sentencing court rather than the jury found facts that established the mandatory guidelines range. *Booker*, 543 U.S. at 230-45. The Court remedied that constitutional defect by severing the statutory provisions that made the guidelines range mandatory, resulting in a regime in which the Guidelines are advisory, and courts are to consider the guidelines and the other factors in 18 U.S.C. § 3553(a) in selecting an appropriate sentence. *Id.* at 245-68; *see Gall v. United States*, 128 S. Ct. 586, 594 (2007).

Nothing in *Booker* expands the scope of sentencing reductions under Section 3582(c)(2). As an initial matter, even before *Booker*, the Guidelines were not mandatory in Section 3582(c) proceedings. Judges were never required to reduce a sentence. Rather, Section 3582(c)(2) states that a court "may" reduce the term of imprisonment. Nor, if courts did so, were they required to reduce a sentence to the full extent permitted by the retroactive guideline amendment. Instead, judges were to "consider[] the factors set forth in Section 3553(a) to the extent that they are applicable" and reduce the sentence "if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(2). Thus, the Section 3553(a) factors were always the guiding principle under Section 3582(c)(2), with the sole limitation that a reduction must accord with the Commission's policy statements.

*Booker* had no direct effect on Section 3582(c)(2). *Booker's* constitutional holding applied the now-familiar rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Booker*, 543 U.S. at 231 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). That rule has no application to proceedings under Section 3582(c)(2), which can only decrease - not increase - the defendant's sentence. Moreover, the limits Section 3582(c)(2) and U.S.S.G. § 1B1.10 impose on the extent of reductions are, at most, the equivalent of mandatory minimum sentences, which the Sixth Amendment permits within an otherwise-authorized sentencing range. *See Harris v. United States*, 536 U.S. 545 (2002).

*Booker's* remedial holding is likewise inapplicable. *Booker* applies to full sentencing hearings - whether in an initial sentencing or in a resentencing where the original sentence is vacated for error. The Court excised and severed the provision that made the Guidelines mandatory in those sentencings, 18 U.S.C. § 3553(b). It also excised the related provision on appellate review, 18 U.S.C. § 3742(e). "With these two sections excised (and statutory cross-references to the two sections consequently invalidated)," the Court held, "the remainder of the Act satisfies the Court's constitutional requirements." 543 U.S. at 259. Section 3582(c)(2) contains no cross-reference to Section 3553(b) and therefore was not excised by *Booker*. Nor is there anything else in *Booker* that directly addresses Section 3582 proceedings.

The *Booker* Court applied its advisory guidelines remedy to cases in which no Sixth Amendment violation existed, concluding that Congress would not have wanted the Guidelines to be mandatory in some contexts and advisory in others. 543 U.S. at 266. The Court rested its conclusion on two observations, neither of which is applicable to reduction proceedings under

Section 3582(c)(2).  The first was that Congress would not have wanted to "impose mandatory . . . . limits on a judge's ability to *reduce* sentences," but not to "impose those limits upon a judge's ability to *increase* sentences."  *Id*. (emphasis in original); *see id.* (Congress would not have wanted such "one-way lever[s]").  But Congress clearly intended Section 3582(c)(2) to be a "one-way lever" – it gives the court the option to leave a defendant's sentence alone or to reduce it, but does not permit the court to increase the sentence.  Second, the Court observed that rendering the Guidelines partially advisory and partially mandatory in federal sentencings would engender significant "administrative complexities."  *Id*.  Given the limited scope of a proceeding under Section 3582(c)(2), none of the significant "administrative complexities" is present that led the Supreme Court to require all guideline provisions to be advisory at full sentencing proceedings.  *Booker*, 543 U.S. at 266.  To the contrary, holding that *Booker* requires full resentencings or permits a reduction in sentence beyond the limits set by Congress and the Sentencing Commission whenever a guideline is made retroactive  — in many cases years after the original sentencing — would create major administrative complexities and would vastly expand the intended scope of a sentencing reduction under Section 3582(c)(2).

Section 3582(c)(2)'s direction that the court "shall consider the factors in section 3553(a) to the extent that they are applicable" also does not aid the defendant.  Although one of the factors in Section 3553(a) is the Guidelines range, and *Booker* made that range advisory, the still-valid statutory language in Section 3582(c)(2) requires courts to consider the Section 3553(a) factors (including the Guidelines) when determining whether and by how much to reduce the sentence, "consistent with applicable policy statements issued by the Sentencing Commission." The Commission has made clear that courts are to consider the Section 3553(a) factors in determining whether a reduction is warranted and "the extent of such reduction, but only *within*

*the limits*" of Section 1B1.10.  U.S.S.G. § 1B1.10, app. note 1(B)(I) (emphasis added).

Nothing in the Supreme Court's recent decisions in *Gall v. United States*, 128 S. Ct. 586 (2007), or *Kimbrough v. United States*, 128 S. Ct. 558 (2007), affects this analysis.  Both decisions reaffirmed *Booker*'s remedial holding that the Guidelines are advisory and that sentences are subject to appellate review for reasonableness, and both decisions proceeded to apply that remedial holding to the questions before them.  Because, as explained above, *Booker* does not apply to Section 3582(c) proceedings, the applications of *Booker*'s remedial opinion in *Gall* and *Kimbrough* do not apply in such proceedings either.

The defendant relies on *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007), in which the Ninth Circuit concluded that limiting the extent of a Section 3582(c)(2) sentencing reduction to that prescribed by the Sentencing Commission amounts to a mandatory application of the Sentencing Guidelines that is prohibited by *Booker*.  For the reasons stated above, *Hicks*' analysis is flawed and should not be followed by this Court.  *Hicks* fails to consider that the context of a Section 3582(c)(2) proceeding, in which a court may only reduce a sentence or leave it undisturbed, is markedly different from the determinations under mandatory Guidelines which could increase a defendant's sentence - and thus run afoul of the Sixth Amendment - that were addressed in *Booker*.  *Hicks* also fails to recognize that a sentencing reduction under Section 3582(c)(2) is not a full resentencing proceeding, but a limited mechanism only for reducing a sentence to account for a retroactive guideline amendment.  Likewise, *Hicks* ignores the fact that Section 3582(c)(2) incorporates into the statute the limits in Section 1B1.10, and that those statutory limits are binding on sentencing courts.  Perhaps most significantly, *Hicks* did not have before it the revised text of and commentary to Section 1B1.10, which now make plainly clear the proper exercise of the Sentencing Commission's statutory authority to restrict the extent of

21

sentencing reductions.

A decision of the Third Circuit is persuasive. In *United States v. Wise*, 515 F.3d 207 (3d Cir. 2008), the defendants argued that they could gain relief under the crack amendments immediately, even though the Sentencing Commission in Amendment 713 provided that the crack amendments would not become listed in § 1B1.10(c) as retroactive until Amendment 713's effective date of March 3, 2008. The Third Circuit ruled that defendants could not obtain immediate relief under § 3582(c)(2) because § 1B1.10(c) did not yet list the crack amendments. *Id.* at 220-21. The Court stated:

> Some may argue that, because the Guidelines are no longer mandatory, defendants need not wait to apply for relief under § 3582(c)(2). That fundamentally misunderstands the limits of *Booker*. Nothing in that decision purported to obviate the congressional directive on whether a sentence could be reduced based on subsequent changes in the Guidelines. As we have stated before, "[t]he language of the applicable sections could not be clearer: the statute directs the Court to the policy statement, and the policy statement provides that an amendment not listed in subsection (c) may not be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2)." *United States v. Thompson*, 70 F.3d 279, 281 (3d Cir.1995).

*Wise*, 515 F.3d at 221 n.11; *see id.*. at 220 ("The Guidelines are no longer mandatory, but that does not render optional" statutory directives). Under this persuasive reasoning, and under the plain language of Section 3582(c)(2), the Sentencing Commission's determinations regarding whether and to what extent a sentence may be reduced must be respected. *See United States v. Speights*, 2008 WL 2487389 (S.D. Ala. June 23, 2008) (noting in part that *Hicks* "has been roundly criticized in many quarters," and "is overwhelmed by a plethora of persuasive federal decisions from throughout the country in the last few months emphatically overruling *Booker* objections of the kind advanced by [the defendant] here."). *See also United States v. Navarrete*, 2008 WL 1757579 (W.D. Wash. Apr. 15, 2008) (holding that, notwithstanding *Hicks*, a court has

no authority to consider a sentencing reduction where the guideline range is unchanged); *United States v. Mitchell*, 2008 WL 2489930 (W.D. Wash. June 19, 2008) (same).

In the months since the Sentencing Commission amended Section 1B1.10, very few courts have followed *Hicks*, *see United States v. Ragland*, 2008 WL 2938662 (D.D.C. July 31, 2008); *United States v. Shelby*, 2008 WL 2622828 (N.D. Ill. June 30, 2008), while an overwhelming number of courts have rejected *Hicks* and found *Booker* inapplicable to application of a retroactive guideline amendment. *See, e.g., United States v. Outlaw*, 2008 WL 2443374 (4th Cir. June 18, 2008) (unpublished); *United States v. Bell*, 2008 WL 2620904 (E.D. Ark. July 1, 2008); *United States v. Robinson*, 2008 WL 2039268 (E.D. Ark. May 12, 2008); *United States v. Kahlmorgan*, 2008 WL 1776894, *3 (M.D. Fla. Apr. 17, 2008); *United States v. Davis*, 2008 WL 660277, *2 (M.D. Fla. Mar. 6, 2008); *United States v. Thomas*, 2008 WL 2828802 (N.D. Ill. July 17, 2008); *United States v. Hopkins*, 2008 WL 504002, at *1 (N.D. Iowa Feb. 21, 2008); *United States v. Quary*, 2008 WL 1766951, *2 n.1 (D. Kan. Apr. 15, 2008); *United States v. Julien*, 2008 WL 1933340 (D. Me. May 5, 2008); *United States v. Blair*, 2008 WL 2622962 (E.D. Mich. July 2, 2008); *United States v. Green*, 2008 WL 2312927 (E.D. Mo. May 30, 2008); *United States v. Osuna*, 2008 WL 1836943, *2-3 (E.D.N.Y. Apr. 22, 2008); *United States v. Cruz*, 2008 WL 539216, at *2-5 (E.D.N.Y. Feb. 27, 2008) (holding that a reduction in sentence is not authorized if there has been no change in the guideline range, and *Booker* is inapplicable to permit greater relief); *United States v. Veale*, 2008 WL 619176, *3 (N.D.N.Y. Mar. 3, 2008); *Montes v. United States*, 2008 WL 906079 (S.D.N.Y. Apr. 3, 2008); *United States v. Jimenez*, 2008 WL 2774450 (S.D.N.Y. July 16, 2008); *United States v. Roman*, 2008 WL 2669769 (E.D. Pa. July 7, 2008); *United States v. Wright*, 2008 WL 2265272 (E.D. Pa. June 3, 2008); *United States v. Rivera*, 535 F. Supp. 2d 527, 530-31 (E.D. Pa. 2008); *United*

*States v. Austin*, 2008 WL 2412949 (M.D. Pa. June 11, 2008); *United States v. Roberson*, 2008 WL 2020209, *2 (M.D. Pa. May 8, 2008); *United States v. Havelka*, 2008 WL 2687099 (W.D. Pa. July 8, 2008); *United States v. Robinson*, 2008 WL 2578043 (W.D. Pa. June 26, 2008) (extensive discussion); *United States v. Strothers*, 2008 WL 2473686 (W.D. Pa. June 19, 2008); *United States v. Finney*, 2008 WL 2435559 (W.D. Pa. June 16, 2008) (rejecting decision in *Hicks*); *United States v. Johnson*, 2008 WL 2260052, *4 (W.D. Va. June 3, 2008); *United States v. Boyce*, 2008 WL 2725091 (S.D. W. Va. July 11, 2008). *But see United States v. Stokes*, 2008 WL 938919 (M.D. Fla. Apr. 7, 2008), and *United States v. Barrett*, 2008 WL 938926 (M.D. Fla. Apr. 7, 2008) (holding that *Booker* does not make advisory the restriction in Section 1B1.10 limiting sentencing reductions to cases in which an offense level has been lowered, but holding that, where there would be an offense level reduction but for an anomalous application of the revised drug equivalency table, the court has authority under *Booker* to afford the reduction).

The conclusion that *Booker* does not apply in proceedings under Section 3582(c)(2) is also consistent with the courts of appeals' unanimous holding that defendants whose convictions are final have no right to resentencing under *Booker* on collateral review under 28 U.S.C. § 2255. *See Cirilo-Muñoz v. United States*, 404 F.3d 527, 532-33 (1st Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 141-44 (2d Cir. 2005); *Lloyd v. United States*, 407 F.3d 608, 613-16 (2005); *United States v. Morris*, 429 F.3d 65, 66-67 (4th Cir. 2005); *United States v. Gentry*, 432 F.3d 600, 602-05 (5th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Never Misses A Shot v. United States,* 413 F.3d 781, 783-84 (8th Cir. 2005); *United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir. 2005); *In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir.

24

2007).  It would be incongruous if courts interpreted the congressional scheme in Section

3582(c)(2) – which provides for much more limited relief than Section 2255, concerns only

sentence reductions, and raises no Sixth Amendment concerns – as triggering a full *Booker*

resentencing or permitting a reduction in sentence beyond the limits set by Congress and the

Sentencing Commission.

Indeed, given that *Booker* does not apply to the many defendants whose sentences were

final when *Booker* was decided, it would be unfair to apply *Booker* to that subset of those

defendants whose sentences are being lowered under Amendment 706.  Section 3582(c)(2) was

designed only to permit courts to reduce defendants' sentences to account for a retroactive

guideline amendment.  To grant these defendants a further reduction that is not afforded to all

other similarly situated defendants would produce the unwarranted sentencing disparities

Congress sought to eliminate in the Sentencing Reform Act.  It would also entail enormous

additional cost and effort in resentencing tens of thousands of inmates, even though Section

3582(c)(2) by its terms does not authorize a full resentencing or permit a reduction in sentence

beyond the limits set by Congress and the Sentencing Commission.

The defendant's contrary claim also suffers from an irremediable paradox.  On the one

hand, he recognizes the Sentencing Commission's sole authority, pursuant to Sections 994 and

3582(c), to declare an amendment retroactive.  But on the other hand, in his view, the moment

the Commission declares an amendment retroactive, anything else it has to say about the extent

of retroactivity becomes "advisory."  But if Section 1B1.10 is advisory, then so is the Sentencing

Commission's decision to include an amendment in the list in that section of retroactive

provisions.  If the defendant is right, then a court could simply reject Section 1B1.10 altogether,

and make its own decision about whether an amendment is retroactive, to the point of deciding

that it will not consider any amendment as applicable retroactively (a proposition which the defense surely does not endorse). The simple fact is that the Sentencing Commission has the sole statutory authority to determine whether and to what extent an amendment is retroactive. Its directions in Section 1B1.10 are binding. The decision in *Booker* did not remotely address this question, and is inapplicable.

In short, this Court must abide by the limitations on sentencing reductions directed by Congress. *Booker* does not apply, and there is no authorization for this Court to impose a reduction in sentence beyond the limits set by Congress and the Sentencing Commission. Because the defendant was sentenced as a Career Offender, "[a] reduction in the defendant's term of imprisonment . . . is not authorized under 18 U.S.C. § 3582(c)(2) [because the] amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10 (a)(2)(B).

### C. THE DEFENDANT'S SENTENCE WAS NOT BASED ON THE CRACK GUIDELINES.

The defendant argues that the court "considered the difference between Mr. Thompson's non-career offender Guideline range and his career offender Guideline range when imposing sentence on Mr. Thompson," and therefore the defendant's sentence was "based on" the crack guidelines. This argument is curious because there was no difference at the original sentencing between those ranges. As explained above, the defendant's Guideline range at the original sentencing, under both a non-career offender Guideline range and his career offender range, was 188 to 235 months. The Court, however, clearly sentenced Thompson as a career offender pursuant to U.S.S.G. §4B1.1. The Court's imposition of a sentence of 172 months was simply "an adjusted concurrent sentence from 188 months," because at the time of the original

sentencing the defendant was a state-court prisoner and the sentence was intende to ensure that

the defendant received credit for 16 months of pre-trial incarceration he had already spent in state

custody.

To the extent that the defendant is arguing that because the ranges under both a non-

career offender and a career offender analysis were the same, and the Court's sentence can

therefore be equally or alternatively based on non-career offender or career offender analysis, this

argument also fails.  The record clearly indicates that although the Court engaged in a straight

Guideline analysis (as it should have), and found the defendant's otherwise applicable guidelines

before application of the career offender provision, the Court clearly went on to determine that

Thompson qualified and would be sentenced pursuant to U.S.S.G. § 4B1.1 in light of his career

offender status.  Indeed, the defendant argued *against* application of the career offender

provisions at the original sentencing, and the court applied those provisions over the defendant's

objections and requests for departure.

**D.    THE DEFENDANT IS NOT ENTITLED TO A HEARING.**

Finally, the defendant argues that he has a right to appear before the Court in connection

with his motion for reduction of sentence.  The defendant's argument, however, is directly

refuted by the relevant policy statement, the Federal Rules of Criminal Procedure, and case law

addressing this issue.

Section 1B1.10(a)(3) clearly states that "proceedings under 18 U.S.C. § 3582(c)(2) and

this policy statement do not constitute a full resentencing of the defendant."  In addition, Rule

43(b)(4) explicitly provides that a defendant "need not be present" when the proceeding involves

a reduction of sentence under 18 U.S.C. § 3582(c).  Likewise, the federal courts of appeal to

address this issue have uniformly held that a defendant has no constitutional or statutory right to

be present in connection with a motion filed under Section 3582(c). *See, e.g., Anderson v. United States*, 241 Fed. Appx. 625, 629 (11th Cir. July 18, 2007) (unpublished) ("Under Federal Rule of Criminal Procedure 43(b)(4), a defendant's presence at a § 3582(c) sentence correction proceeding is *not* required") (emphasis in original); *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (same); *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) (same, noting that "a proceeding under 18 U.S.C. § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution."). Courts have reached the same result in proceedings based on the retroactive crack amendments. *See, e.g.*, *United States v. May*, 2008 WL 2790212 (S.D. Ala. July 18, 2008); *United States v. Robinson*, 2008 WL 2578043, *6 (W.D. Pa. June 26, 2008); *United States v. Fitts*, 2008 WL 2356754 (N.D. Ind. June 5, 2008); *United States v. Johnson*, 2008 WL 2260052, *7 (W.D. Va. June 3, 2008); *United States v. Green*, 2008 WL 2312927 (E.D. Mo. May 30, 2008); *United States v. Law*, 2008 WL 2313132 (N.D. Ind. May 30, 2008); *United States v. Gladney*, 2008 WL 2062707 (E.D. Wash. May 13, 2008); *United States v. Mackey*, 2008 WL 2018270 (W.D.N.C. May 6, 2008); *United States v. Hopkins*, 2008 WL 504002, at *1 (N.D. Iowa Feb. 21, 2008).

This rule is justified by the limited scope of a Section 3582 proceeding, which is "not a second opportunity to present mitigating factors to the sentencing judge" but "is simply a vehicle through which appropriately sentenced prisoners can urge the court to exercise leniency to give certain defendants the benefits of an amendment to the Guidelines," *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995), and which, therefore, may generally be decided without a hearing. *See, e.g., Legree*, 205 F.3d at 730 ("a judge need not hold a hearing when considering a Section 3582 motion"); *Tidwell*, 178 F.3d at 948-49.

Moreover, as the Seventh Circuit has noted, this principle "makes good practical sense because a defendant, in the federal penal system, often is hundreds if not thousands of miles away from the courthouse where his sentence was originally imposed." *Tidwell*, 178 F.3d at 949. Transporting, housing, and holding hearings for the approximately 20,000 widely scattered inmates affected by Amendment 706 would not only impose tremendous costs, difficulties, and court and prison congestion unwarranted by the limited and simple nature of Section 3582(c)(2) proceedings, but would also delay the granting of relief under the amendment.

The defendant, however, relies on *United States v. Byfield*, 391 F.3d 277 (D.C. Cir. 2004) and argues that a defendant has a right to a hearing whenever any factor important to the sentencing determination is "reasonably in dispute." *See* Def.'s Memo at 27; *see also Byfield*, 391 F.3d at 280-81 (district court erred in denying § 3582 motion without a hearing where factors concerning the court's decision were "reasonably in dispute"). *Byfield* is clearly distinguishable from this case, however, because it involved a factual dispute concerning the applicability of a Sentencing Guidelines amendment to the defendant's conduct at issue. 391 F.3d at 279-81. In this case, by contrast, there is no such factual dispute, and the defendant's motion may therefore be decided without a hearing.

For all of these reasons, the defendant has no right to appear before this Court in connection with his motion for reduction of sentence and the Court can and should decide the defendant's motion on the papers.

III.    **CONCLUSION**

For the reasons stated above, because the defendant was sentenced as a career offender, the November 1, 2007 amendments to the crack cocaine guidelines do not alter or affect his guideline range and accordingly, he is not eligible for a reduction in his sentence.


Respectfully submitted,

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

/s/
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct19105
United States Attorney's Office
157 Church Street, 23d Floor
New Haven, CT 06510
(203) 821-3700
(203) 821-3829 (fax)
Stephen.Reynolds@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, including the defendant and his counsel identified below, as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

David J. Wenc
Wenc Law Offices
546 Halfway House Road
P. O. Box 306
Windsor Locks, Connecticut 06096
(860) 623-1195
(860) 292-6705 (fax)
david.wenclaw@sbcglobal.net

   /s/
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY