UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 95 CR 69 |
| ) | |
| GREGORY SHELBY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

On December 12, 1995, Gregory Shelby pled guilty to both counts of a superceding indictment without a plea agreement. Count One charged Shelby with knowingly and intentionally possessing with an intent to distribute approximately 497 grams of mixtures containing cocaine and approximately 120 grams of mixtures containing cocaine base (crack cocaine). Count Two charged Shelby with carrying and using a firearm during and in relation to the commission of a drug trafficking crime. Both crimes were charged as having been committed on or about January 14, 1993, a date when Shelby was 23 years old. Count One carried a minimum mandatory sentence of 10 years and Count Two carried a mandatory term of 5 years consecutive to any other sentences imposed.

The Presentence Investigation Report reflected Guideline calculations based on a total offense level of 32 and a criminal history category of I; the Guideline range for Count One was 121 to 151 months with Count Two at 60 months. At the sentencing hearing, the Court increased Shelby's total offense level to 38 based upon additional drug quantities constituting relevant conduct. The reconfigured Guideline range for Count One was 235 to 293 months' imprisonment to be followed by Count Two's mandatory sentence of 60 months. The court sentenced Shelby to 235 months on Count One and 60 months on Count Two, for a total period of incarceration of 295 months—approximately 24 ½ years.

At the time his sentence was imposed on March 7, 1996, Shelby was 26 years old. He has now been imprisoned for approximately 13 years. His conviction and sentence were affirmed in *United States v. Shelby*, 121 F.3d 1118, 1122 (7 Cir. 1997). Shelby is back before this Court on two motions, one filed by the government and one filed on Shelby's behalf by his counsel. The government's Rule 35 Motion for Reduction of Sentence is based on Shelby's rendering of substantial assistance to the government in its investigation and prosecution of a number of other individuals about whom Shelby had knowledge. Shelby's motion is based on the premise that Amendment 706 to the federal Sentencing Guidelines, made retroactive by Amendment

711 and affecting the crack cocaine Guideline, reduces the base offense level in this case.

At the time of Shelby's sentencing, the Sentencing Guidelines were mandatory and the 100-to-1 powder cocaine to crack cocaine sentencing disparity was embedded within them. The crack/powder disparity was a product of Congress's establishment of minimum mandatory sentences that were set purely on the weight and type of drugs involved. Contrary to pre-Guideline sentencing practices, which required sentencing judges to consider and evaluate a number of criteria before imposing a sentence, the Sentencing Commission adopted a drug-weight-driven scheme using the minimum mandatory incarceration provisions set by Congress as a point of departure. With punishment increasing in lockstep with the weight and type of drugs involved, the comprehensive sentencing considerations of 18 U.S.C.§ 3553(a), some of which are favorable to a defendant, were essentially rendered unavailable for most drug cases in light of the provisions of § 3553(b).

The mandatory aspect of subsection (b)(1) of § 3553 was held unconstitutional in *United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 756-57 (2005). In addition to *Booker*, the Supreme Court has discussed sentencing practices in two other important recent cases, *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and *Gall v. United States*, 128 S. Ct. 586 (2007). Another legal upheaval of a different sort was

the action of the United States Sentencing Commission in reducing certain crack cocaine offense levels and making the reductions retroactive. The net effect of the Supreme Court action is to vest greater discretion in federal sentencing courts with the long-established Guidelines playing an advisory role. The action of the Sentencing Commission serves to narrow somewhat the differential in punishments for crack cocaine when compared to powder cocaine.

Notwithstanding the described sea change in federal sentencing law, there yet remain a number of open issues in this case. Foremost among them is the extent to which, if at all, this court is empowered to fully consider all of the factors of 18 U.S.C. 3553(a) by virtue of either or both pending motions. Another issue to be resolved is the extent to which this court is constrained to the ratio the Sentencing Commission has chosen for crack and powder cocaine offenses. A third issue is whether other sentencing factors besides Shelby's conduct in rendering substantial assistance to the government can be considered within the confines of the government's Rule 35 motion.

The vehicle for consideration of Shelby's motion for a reduction in his sentence is 18 U.S.C. § 3582(c)(2), dealing with lowering of a sentencing range by action of the Sentencing Commission. Section 3582 itself states that the court "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent

that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The case of *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007), directly addressed the effect of *Booker* on the policy statements contained as part of the Sentencing Guidelines.

In holding that a mandatory system is no longer an open choice, to the extent that policy statements would have the effect of making the Guidelines mandatory, *Booker* established that they must be void. Id. at 1170. Booker emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. 543 U.S. at 266, 125 S. Ct. at 768. As a consequence, district courts are necessarily endowed with the discretion to employ the § 3553 factors when issuing new sentences under § 3582(c)(2). The ease and simplicity of mandatory calculations can no longer stand as a substitute for the evaluation of relevant factors necessary to a determination of just punishment. *See Hicks,* 472 F.3d at 1170.

We recognize that there are a number of decisions and opinions contrary to the decision in *Hicks*. There is presently no Seventh Circuit case on point. However, based on the teaching of *Booker* and the reasoning of *Hicks*, we believe the better view is that policy statements, like the substantive Guideline provisions, are advisory only and do not preclude consideration of all of the sentencing factors of § 3553(a) in this case. As a result, Shelby's motion itself affords a basis for de novo review and

imposition of a sentence that is not constrained by Commission policy statements or the ratio it chose for crack and powder cocaine offenses.

The third issue described above is whether sentencing factors other than the defendant's conduct in rendering substantial assistance to the government can be considered within the confines of the government's Rule 35 motion. Although it is not essential to decide this issue in view of our belief that Shelby's own motion is the springboard to evaluate all of the § 3553(a) sentencing factors, we believe it is appropriate to do so. In this instance, we believe there is recent precedent from the Court of Appeals for the Seventh Circuit that affords an independent basis to consider the full § 3553(a) sentencing factors for Shelby even though the government's motion is confined to Shelby's substantial assistance to the government. In the quite recent case of *United States v. Bush*, 523 F.3d 727 (7 Cir. 2008), the Seventh Circuit reviewed a plea bargain between defendant Bush and the government. In return for Bush's plea of guilty to a drug distribution count and his substantial assistance to the government, the government agreed to move for a two-level reduction in the calculation of the drug Guideline and dismissal of a firearms count. The government so moved the court and, in addition, dismissed an § 851 information that increased Bush's mandatory minimum sentence to 20 years' imprisonment and further moved to release Bush from the normal mandatory minimum sentence of 10 years. The court granted the government's motion

in its entirety, producing a sentencing range of 100 to 125 months' imprisonment based on a criminal history category of IV. Not simply content that the government more than lived up to its part of the plea agreement, defendant Bush insisted that his sentence should be reduced still further, to 63 months, based on his perceived unfairness of the 100:1 crack/powder ratio. The district court declined Bush's request and sentenced him to 96 months' imprisonment. After the Seventh Circuit heard arguments in the *Bush* case but before it decided the appeal, the Supreme Court issued its decision in *Kimbrough*.

The Seventh Circuit ordered supplemental briefing in *Bush* in light of *Kimbrough*. Determining that *Kimbrough* clarified that Congress did not mandate the 100:1 ratio to all crack offenses and that a court may reduce a defendant's sentence below the Guidelines range in a routine crack-related case if it is convinced that the ratio alone unfairly punishes the defendant, the Seventh Circuit remanded the case for resentencing. The twofold significance of the *Bush* decision is that the Seventh Circuit allowed consideration of sentencing factors not related to substantial assistance in a motion filed by the government for that sole reason and that *Kimbrough* permitted de novo review of a drug sentence unconstrained by a 100:1 or any other crack/powder ratio. Aside from timing differences in the filing of the government's motion in *Bush* (pre-sentence) as opposed to the Rule 35 motion in the instant case (post-sentence), the

two motions are the same. Accordingly, we believe the government's motion in this case affords this court the ability to consider all of the sentencing factors set forth in 18 U.S.C. § 3553.

In writing for the Supreme Court in *Kimbrough*, Justice Ginsburg said that in the ordinary case, the Sentencing Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. But the crack cocaine Guidelines presented no elaborative discussion of the level of review for an outside the heartland sentence for two reasons. *Kimbrough* describes the Sentencing Commission's departure from its empirical approach in formulating the crack Guidelines. The Commission had offered criticism of the crack/powder ratio and recommended changes to the ratios to Congress in 1997 and again in 2002. These two Commission reports followed Congress's rejection of an amendment in 1995 establishing a 1:1 ratio. The continued criticisms by the Commission of the crack Guidelines was based on its research and experience with the 100:1 ratio and was multi-faceted. The empirical studies the Sentencing Commission engaged in were rejected by Congress, thereby producing Guidelines driven by the minimum mandatory sentences set by Congress, which the Sentencing Commission believed to be excessive.

In *Kimbrough*, the government acknowledged that the Guidelines are now advisory and that, as a general matter, courts may vary from Guideline ranges based

- 8 -

solely on policy considerations, including disagreements with the Guidelines. A district court may consider arguments that the Guideline sentence itself fails properly to reflect § 3553 (a) considerations. In the ordinary case, the Sentencing Commission's recommendation of a sentencing range "will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007). The sentencing judge, on the other hand, is in a superior position to apply the statutory factors to the circumstances of a particular defendant and impose a sentence consistent with the facts and law.

It seems plain that, aside from mandatory sentences set by Congress, federal district judges are free to consider the full panoply of sentencing considerations expressed in 18 U.S.C. § 3553(a) and to differ from the Guidelines when the judicious application of discretion requires it. *Kimbrough* teaches that, and reason and fairness permit no alternative.

The statutory provisions of 18 U.S.C. § 3553 are what command the process of sentence determinations. This Court has had the benefit of detailed written submissions from counsel and others, in addition to holding two hearings for the purpose of ruling on the motions before the Court. The advocacy for both sides has been excellent, and the relevant sentencing criteria have been fully discussed and argued. The original sentencing hearing held on March 7, 1996, reflected the court's view that Gregory

Shelby was a drug dealer and gang member and that he had committed serious drug crimes. The court told Shelby that he deserved to be punished severely but added the following: "But the sentence you are facing at your age, if I were free to sentence you, I would not give you this high of a sentence. You deserve to be punished severely. The Guideline calculations and the gun count take us well past what might be necessary, both to punish you and to provide some measure of deterrence and to vindicate these laws, but I do not have that freedom, Mr. Shelby, and I do not know what else to tell you to make it easier." Tr. 3/7/96, pp. 157-58.

At the age of 26, Shelby was committed to spend the next 24 ½ years of his life in a federal prison. He has served a little better than half of his sentence at this point. As previously stated, the sentence imposed was mandated by the Sentencing Guidelines and its structure predicated on minimum mandatory statutory provisions and the consecutive sentence for the firearm conviction. As is also readily apparent from a reading of the sentencing hearing transcript, had the Guidelines been advisory rather than mandatory, Shelby's sentence would not have been so severe.

The passage of more than thirteen years has seen more than changes in federal sentencing law. Changes in people have also occurred. We have seen such changes in Shelby. At the time of his sentencing, Shelby offered the court lies about the nature and extent of his drug dealing and declined to supply information about any of his

accomplices. While in prison, he undertook to assist the government by telling them what he knew, even as the effort exposed him and members of his family to a risk of great harm. It was the successful assumption of that risk that has prompted the government to file its motion to reduce Shelby's sentence, although not to the extent sought by Shelby.

Other changes have also occurred. While in prison, Shelby earned his GED certificate and took other educational courses available to him. His mother died of breast cancer at 55, and Shelby was unable to offer his comfort or support in her dying days. His lament, expressed before the Court, appeared genuine. When he was 23, he got into the selling of drugs, in part because gang members romanticized the experience and what doing so could or would bring him. The "streets grabbed him," and he went willingly. Serving thirteen plus years has taught him the emptiness of the gang members' enticements.

To their credit, and to Shelby's, his family has never abandoned him and their regular court attendance is worthy of note. Unlike many others similarly situated, Shelby has been promised a job in a family business, and there is no basis to doubt his expressed desire to prove he can be a productive citizen.

That Shelby committed serious crimes is beyond rational dispute. That the statutorily mandated sentences for the drug violation of (at least) 10 years with an

additional 5 years for his related gun violation represent substantial punishment for his crimes is equally apparent. A prison sentence of 15 years for Shelby adequately reflects the seriousness of his offenses, promotes respect for the law, and provides just punishment. Additionally, it affords adequate deterrence to future criminal conduct not only for Shelby but also for those who may think about the consequences of like criminal acts.

For Shelby, a sentence of that length will afford him the opportunity to salvage the rest of his life as a free man and to pursue available educational or vocational training that may be appropriate. The Court has struggled to find a justification for lengthening Shelby's sentence beyond 15 years—whether to 18 or 20 years or more—and is simply unable to do so. While nobody other than Shelby can guarantee his future as a productive, law-abiding citizen, any humane system of crime and punishment should afford—at least for non-capital cases—the opportunity for rehabilitation and redemption if the sentencing considerations of 18 U.S.C. § 3553 are to be honored and satisfied.

The discussions, observations, and reasons addressed by the court at the hearing on April 23, 2008, are hereby incorporated into and form a part of the basis for the court's decision.

In conclusion, both motions before the court are granted. It appears both futile and unnecessary to compartmentalize which motion should bear what particular portion of the sentencing reduction ordered today. In the end, both motions can operate independently to produce the result reached. Shelby's sentence on Count One shall be 10 years and his sentence on Count Two shall be 5 years, for a total sentence of 15 years in the custody of the Bureau of Prisons. We will leave it to the Bureau of Prisons to calculate his release date as soon as possible in light of the service of a substantial portion of that sentence. The period of supervised release and the fine and other conditions imposed at the March 7, 1996 hearing are reimposed.

It is so ordered.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:   June 30, 2008